# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD WALTER TAYLOR, JR.,<br><br>Petitioner,<br><br>v.<br><br>C. PFEIFFER,<br><br>Respondent. | Case No. 1:17-cv-01699-LJO-SAB-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.**

**BACKGROUND**

On July 23, 2013, Petitioner was convicted by a jury in the Fresno County Superior Court of: attempted premeditated murder (count 1); two counts of assault with a firearm (counts 2, 3); and being a felon in possession of a firearm (count 4). Petitioner was sentenced to life with the possibility of parole on count 1 plus twenty-five years to life for personally inflicting great bodily injury, a concurrent term of eight years for count 3, and a concurrent term of six years for count 4. The eight-year term on count 2 was stayed. (LD[1] 1). On August 31, 2015, the California Court of Appeal, Fifth Appellate District affirmed the judgment. People v. Taylor, No. F067854,

---

[1] "LD" refers to the documents lodged by Respondent on March 9 and October 22, 2018. (ECF Nos. 14, 16, 32). LD page numbers refer to the page numbers located at the bottom of the page.

1

2015 WL 5121899, at *5 (Cal. Ct. App. Aug. 31, 2015), <u>as modified on denial of reh'g</u> (Sept. 16, 2015). On November 10, 2015, the California Supreme Court denied the petition for review. (LDs 4, 5). Thereafter, Petitioner filed nine state post-conviction collateral challenges. (LDs 6, 8, 10, 12, 14, 16, 18, 20, 22).

On December 10, 2017, Petitioner constructively filed the instant federal petition for writ of habeas corpus. In the petition, Petitioner raises the following claims for relief: (1) ineffective assistance of counsel; and (2) invalidity of Petitioner's conviction under California Penal Code section 12022.53(d) in light of <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015). (ECF No. 1). On January 8, 2018, Petitioner filed a motion for stay and abeyance. (ECF No. 10). On February 27, 2018, Respondent filed a motion to dismiss the petition as untimely and opposition to the motion for stay. (ECF No. 12). On August 23, 2018, the Court denied as moot Petitioner's motion for stay and abeyance and denied Respondent's motion to dismiss without prejudice to renewing the motion after the Court rules on the merits of the petition. (ECF No. 28). Respondent filed an answer, and Petitioner filed a traverse. (ECF Nos. 31, 33).

## II.

## STATEMENT OF FACTS[2]

On March 13, 2013, Sarah Diaz was working as the manager of the All American Sports Fan store in Manchester Mall in Fresno. From the sports store, a person can see the barber shop called Colima's Fade Shop. About 7:30 p.m., two people entered the sports store: Abel Price, a thin man wearing a blue shirt, and defendant who was wearing dark jeans and a white T-shirt. A video showing Price and defendant inside the sports store was shown to the jury.

After defendant and Price left the sports store, a fight broke out in the mall between Price and one of the barbers, Ronnie Moore. Defendant also was involved in the fight with Moore. Defendant ran off before Price and Moore stopped fighting. As he left, defendant stated, "I'm gonna kill this mother fucker." When the fight ended, Price left with a woman who had been yelling at Moore during the fight.

Someone had summoned the mall security guards and they arrived and spoke with Moore and individuals who had witnessed the fight. As Diaz was walking back to her store after being interviewed, she saw someone running toward the barber shop. The person was wearing dark jeans and a white T-shirt. Diaz identified the person as defendant.

---

[2] The Court relies on the California Court of Appeal's August 31, 2015 opinion for this summary of the facts of the crime. See <u>Vasquez v. Kirkland</u>, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

2

>Diaz feared for Moore's safety and saw Moore duck into the barber shop bathroom. Diaz saw defendant lift up his arm. Defendant held a large, black handgun in his right hand. Defendant aimed in the direction of Moore as Moore ducked into the barber shop's bathroom. After firing the shots, defendant ran toward a mall exit. Moore explained that he had a daughter with Trenice Williams and Williams was the one who was yelling at him during the altercation in the mall. Williams had demanded to speak with Moore immediately, even though Moore was busy with a client. Moore refused to identify defendant as the individual in the white T-shirt out of fear someone else would be harmed. The other barber also felt intimidated.
>
>Moore testified that the man in the white T-shirt punched him; the man in the blue shirt joined the fight. As the fight ensued, the man in the white T-shirt left the area. Someone announced they were calling the authorities and Moore let go of the man in the blue shirt. Shortly thereafter, Moore heard someone say that somebody was coming back and Moore ran to the bathroom.
>
>Rafiola Binger was at the barber shop so her son could get a haircut from Moore. Binger heard Williams and Moore arguing and saw the altercation break out into a physical fight. Binger identified defendant as one of the two men confronting Moore. Later, defendant returned to the barber shop and started shooting. Shots were fired into the bathroom. Binger was hit in the back; she heard the shots and felt burning and pain to her spine. Four bullet holes were found in the wall at the back of the barber shop, near the bathroom door.
>
>Binger was hospitalized for over a month following surgery on her back. The parties stipulated that Binger was struck in the lower back by a bullet and the injury necessitated surgery. The injury resulted in the paralysis of Binger's lower extremities and satisfied the great bodily injury enhancement.
>
>Law enforcement tracked defendant and Price to Eureka, California. Defendant and Price were arrested in Eureka on March 22, 2013.

Taylor, 2015 WL 5121899, at *1–2.

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged convictions arise out of the Fresno County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Lockyer v. Andrade, 538 U.S. 63, 70–71 (2003); Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision. Musladin, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable

application of, [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412–13; see also Lockyer, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538 U.S. at 75–76. The writ may issue only "where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. In other words, so long as fair minded jurists could disagree on the correctness of the state court's decision, the decision cannot be considered unreasonable. Id. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The Court looks to the last reasoned state court decision as the basis for the state court judgment. Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011). If the last reasoned state court decision adopts or substantially incorporates the

reasoning from a previous state court decision, this Court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99–100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Where the state courts reach a decision on the merits but there is no reasoned decision, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This Court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102.

**IV.**

**REVIEW OF CLAIMS**

**A. Ineffective Assistance of Counsel**

In his first and third claims for relief, Petitioner asserts ineffective assistance of counsel for failure to request pinpoint instructions regarding provocation and for inadequate investigation into Petitioner's mental health. (ECF No. 1 at 5–11, 14–16).[3] Respondent argues the state courts' rejection of these claims was reasonable. (ECF No. 31 at 12, 18).

---

[3] Page numbers refer to the ECF page numbers stamped at the top of the page.

1. *Strickland* Legal Standard

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland, 466 U.S. at 687. First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Richter, 562 U.S. at 105 ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." (citing Strickland, 466 U.S. at 690)). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687. A reviewing court should make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." Id. at 689.

Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693). A reviewing court may review the prejudice prong first. See Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002).

When § 2254(d) applies, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Richter, 562 U.S. at 101. Moreover,

because Strickland articulates "a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted). Thus, "for claims of ineffective assistance of counsel . . . AEDPA review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting Burt v. Titlow, 571 U.S. 12, 15 (2013)). When this "doubly deferential" judicial review applies, the inquiry is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

2. Failure to Request Pinpoint Instructions

In his first claim for relief, Petitioner asserts that his trial counsel was ineffective for failing to request pinpoint instructions that directed the jury to consider provocation in determining whether Petitioner attempted to kill with deliberation and premeditation. (ECF No. 1 at 5–11). This claim was raised on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned opinion. The California Supreme Court summarily denied Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the California Court of Appeal. See Wilson, 138 S. Ct at 1192.

In denying Petitioner's ineffective assistance of counsel claim for failure to request pinpoint instructions, the California Court of Appeal stated:

> Defendant contends he received ineffective assistance of counsel because defense counsel failed to request a modified version of CALCRIM No. 522 (Provocation: Effect on Degree of Murder).[4] He also asserts defense counsel's closing argument exacerbated the problem. We disagree.

---

[4] Defendant asserts the jury should have been instructed that: "Provocation may reduce an attempted premeditated murder to only attempted murder. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed an attempted murder but was provoked, consider the provocation in deciding whether the crime was premeditated attempted murder or simply attempted murder, even if the provocation is not sufficient to reduce the offense to attempted manslaughter."

8

*Factual Summary*

A jury instruction conference was held in chambers. The next morning, the trial court convened in open court outside the presence of the jury. At that time, the trial court stated the proposed instructions in their final wording had been shared with counsel. Defense counsel was asked if he had reviewed the proposed instructions, to which counsel responded "Yes." The trial court then asked defense counsel if he had any objection to any of the instructions or their wording as proposed, to which counsel responded "No." The trial court then asked defense counsel if there were "[a]ny instructions you are asking the court to give, [defense counsel], that the court is not proposing to give?" Defense counsel responded, "No, there is not, Your Honor."

In closing argument, defense counsel argued there was insufficient evidence the person wearing the white T-shirt was defendant; and no "proof beyond a reasonable doubt" that defendant acted with premeditation. Defense counsel argued the evidence established attempted manslaughter, not attempted murder, in that it was the result of a "sudden quarrel or heat of passion" and the result of provocation. Defense counsel argued the shooting was the result of provocation— the fight with Moore—and the shooter acted out of "rage" and "wasn't thinking clearly." Defense counsel pointed out that the exchange with Moore was more than "calling each other names," it also included a number of punches landed by Moore on defendant. Defense counsel argued an "average person under those circumstances" would be "provoked."

*Analysis*

An instruction on provocation for second degree murder is a pinpoint instruction that need not be given sua sponte by the trial court. (*People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1333; *People v. Rogers* (2006) 39 Cal.4th 826, 880 [discussing CALJIC No. 873's provocation instruction].) In order to establish ineffective assistance of counsel from the failure to request this instruction, defendant must demonstrate a reasonable probability that, but for the failure to request this instruction, the outcome would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 691–694, 697–698.) That probability must be sufficient to undermine confidence in the verdict. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216–218.) Defendant has failed to demonstrate the outcome would have been different had the instruction been given.

The decision about what jury instructions to request is inherently a tactical decision to be made by counsel. (*People v. Padilla* (2002) 98 Cal.App.4th 127, 136.) Tactical decisions must be viewed based upon facts at the time, not in hindsight, and rarely warrant a reversal. (*People v. Hinton* (2006) 37 Cal.4th 839, 876.)

The jury received numerous instructions relating to count 1. Among the instructions given was CALCRIM No. 601, informing the jury they had to determine if the attempt was made deliberately and with premeditation and defining those terms for the jury. That instruction also informed the jury the People had to prove premeditation and deliberation beyond a reasonable doubt.

In addition, the jury was instructed with CALCRIM No. 664, which informed them that acting pursuant to a sudden quarrel or heat of passion reduced the attempted killing to attempted voluntary manslaughter and that the concept of provocation was a factor in determining whether the action was the result of heat of passion or sudden quarrel. This instruction informed the jury that if defendant was provoked, the jury was to determine if the provocation was sufficient; in

9

other words, whether a person of average disposition in the same situation would have reacted from passion rather than judgment.

The sufficiency of the provocation is judged objectively; a defendant is not allowed to set up his own standard of conduct. (*People v. Steele* (2002) 27 Cal.4th 1230, 1254.) If the provocation is inadequate to reduce the offense to attempted voluntary manslaughter, it may be considered by the jury in determining whether a defendant acted with premeditation and deliberation. (*Id.* at p. 1255.)

When viewing the entire set of instructions given to the jury, it is apparent the instructions given adequately and fully instructed the jury on defendant's theory; that he was provoked into acting rashly in the heat of passion. (*People v. Holt* (1997) 15 Cal.4th 619, 677.) The jury, however, reasonably could have, and did, reach a conclusion contrary to that urged by the defense.

Here, one witness estimated the time lapse from when defendant ran out of the barber shop to when gunshots were heard as two or three minutes. The overwhelming majority of the evidence, however, establishes that a much longer time period elapsed before gunshots were heard. After defendant left, the fight between Moore and Price continued. Price and Williams then left the area. The mall security guards arrived and interviewed Moore and other witnesses to the fight. These interviews were over before Diaz observed defendant running toward the barber shop and shots being fired.

Defendant had to leave the barber shop, retrieve a gun, and return to the barber shop; a process that by most witnesses' accounts had to have taken much more than two or three minutes.[5] The length of time that elapsed was sufficient for any passion induced by the provocation to have waned. (*People v. Wickersham* (1982) 32 Cal.3d 307, 327, overruled on other grounds in *People v. Barton* (1995) 12 Cal.4th 186, 200.)

The issue of provocation is only relevant to the extent it " 'bears on the question' whether defendant premeditated and deliberated." (*People v. Rogers, supra,* 39 Cal.4th at p. 878.) In convicting defendant, the jury necessarily rejected defendant's defense that he acted reasonably and in the heat of passion and found that the People had proved deliberation and premeditation beyond a reasonable doubt.

There was no ineffective assistance of counsel in failing to request CALCRIM No. 522 and defendant was not prejudiced.

Taylor, 2015 WL 5121899, at *2–4 (footnotes in original).

Petitioner contends that counsel should have requested that the trial court give the following modified version of CALCRIM No. 522:

Provocation may reduce an attempted premeditated murder to only attempted murder. The weight and significance of the provocation, if any, are for you to decide.

---

[5] Moreover, we are not convinced that a person of "average disposition, in the same situation" would have left the barber shop only to return with a gun and attempt to kill someone.

10

> If you conclude that the defendant committed an attempted murder but was provoked, consider the provocation in deciding whether the crime was premeditated attempted murder or simply attempted murder, even if the provocation is not sufficient to reduce the offense to attempted manslaughter.

(LD 4 at 10; ECF No. 1 at 8). Petitioner also contends that counsel should have requested that the trial court give the following modified version of CALJIC No. 8.73:

> If the evidence establishes that there was provocation which played a part in inducing an unlawful attempted killing of a human being, but the provocation was not sufficient to reduce the attempted homicide to attempted manslaughter, you should consider the provocation for the bearing it may have on whether the defendant attempted to kill with or without deliberation and premeditation.

(LD 4 at 11; ECF No. 1 at 8).

However, even without these modified pinpoint instructions, the jury was instructed on deliberation and premeditation as follows:

> If you find the defendant guilty of attempted murder under Count One you must then decide whether the People have proved the additional allegation that the attempted murder was done willfully and with deliberation and premeditation.
>
> The defendant acted willfully if he intended to kill when he acted. The defendant deliberated if he carefully weighed the considerations for and against his choice and knowing the consequences decided to kill. The defendant premeditated if he decided to kill before acting.
>
> The length of time that a person spends considering whether to kill does not alone determine whether the attempted killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. A decision to kill made rashly, impulsively and without careful consideration of the choice and its consequences is not deliberate and premeditated. On the other hand, a cold calculated decision to kill can be reached quickly. The test is the extent of the reflection not the length of time.
>
> The people have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden, then you must find that this allegation has not been proved.

(5 RT[6] 1413–14; 1 CT[7] 269).

The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, and Petitioner has not overcome the presumption that counsel reasonably concluded the given instructions correctly

---

[6] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on October 22, 2018. (ECF No. 32).
[7] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on October 22, 2018. (ECF No. 32).

and adequately addressed provocation and its impact on whether Petitioner premediated and deliberated. Moreover, Petitioner has not established "there is a reasonable probability that . . . the result of the proceeding would have been different," Strickland, 466 U.S. at 694, if trial counsel had requested modified versions of CALCRIM No. 522 and CALJIC No. 8.73. Defense counsel emphasized the issue for the jury in closing argument, focusing almost exclusively on the argument that "most importantly . . . there's not proof beyond a reasonable doubt that Mr. Taylor acted with premeditation, acted deliberately with malice because there was provocation." (5 RT 1383).

Based on the foregoing, under AEDPA's "doubly deferential" review, Donald, 135 S. Ct. at 1376, the California Court of Appeal's decision rejecting the ineffective assistance of counsel claim for failure to request modified versions of CALCRIM No. 522 and CALJIC No. 8.73 was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief based on his first claim, and it should be denied.

### 3. Inadequate Investigation

In his second claim for relief, Petitioner asserts that trial counsel was ineffective for inadequate investigation into Petitioner's mental health. (ECF No. 1 at 14–16). This claim was raised in state habeas petitions filed in the Fresno County Superior Court, California Court of Appeal, and the California Supreme Court. (LDs 8, 12, 14). The Fresno County Superior Court denied the claim in a reasoned opinion. (LD 9). The California Court of Appeal and the California Supreme Court summarily denied the petitions. (LDs 13, 15). As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the Fresno County Superior Court. See Wilson, 138 S. Ct. at 1192.

In denying Petitioner's ineffective assistance of counsel claim for inadequate investigation into Petitioner's mental health, the Fresno County Superior Court stated:

Petitioner contends that he received ineffective assistance of counsel when his attorney failed to conduct an investigation into his history of mental illness prior to trial. In support of this contention, Petitioner argues that the jury may have been persuaded that he had been acting 'under the influence of extreme emotional disturbance,' when he committed his offenses and that he had not formed the requisite intent to commit the offenses for which he was convicted had his attorney ensured that Petitioner was evaluated by a psychiatrist prior to trial.

. . .

Finally, the Court notes that in order to demonstrate ineffective assistance of counsel, Petitioner must allege facts showing that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) that his defense suffered prejudice as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 690–92.)

> Generally [ ... ] prejudice must be affirmatively proved. [Citation.] "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding .... The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Citations.]

(*People v. Ledesma*, *supra*, 43 Cal. 3d 171, 217–218.)

In reviewing a claim of ineffective assistance of counsel, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strickland v. Washington*, *supra*, 466 U.S. 668, 697; see also *In re Cox* (2003) 30 Cal.4th 974, 1019–20 [stating that a court may dispose of an ineffective assistance of counsel claim if the petitioner has not demonstrated sufficient prejudice without deciding if counsel's performance was deficient].)

In the present case, the Court notes that the Fifth District Court of Appeal found that significant evidence was presented at trial that Petitioner had the requisite intent to commit premediated attempted murder.

> Here, one witness estimated the time lapse from when defendant ran out of the barber shop to when gun shots were heard as two or three minutes. The overwhelming majority of the evidence, however, establishes that a much longer time period elapsed before gunshots were heard. [ ... ]
>
> Defendant had to leave the barber shop, retrieve a gun, and return to the barber shop; a process that by most witnesses' accounts had to have taken much more than two or three minutes. The length of time that elapsed was sufficient for any passion induced by the provocation to have waned. (*People v. Wickersham* (1982) 32 Cal.3d 307, 327, overruled on other grounds in *People v. Barton* (1995) 12 Cal.4th 186, 200.)

> The issue of provocation is only relevant to the extent it bears on the question of whether defendant premeditated and deliberated." (*People v. Rogers*, *supra*, 39 Cal.4th at p. 878.) In convicting the defendant, the jury necessarily rejected defendant's defense that he acted reasonably and in the heat of passion and found that the People had proved deliberation and premeditation beyond a reasonable doubt.
>
> (*People v. Reginald Walter Taylor, Jr.* (F067854, Sept. 17, 2015) [nonpub. opn.] at p. 8.)
>
> While Petitioner contends that a "reasonable defense lawyer at the time of trial in the defendant's case might have doubted a [d]iminished capacity argument was a clear winner," but that no "'reasonable lawyer' could have found it to be so weak, as to be not worth raising", the Court notes that great deference must be afforded to the tactical decisions of trial counsel. (*In re Fields* (1990) 51 Cal.3d 1063, 1069–1070.) As Petitioner has failed to demonstrate a reasonable probability that the result of his trial would have been more favorable had his attorney investigated his history of mental illness or had Petitioner evaluated by a psychiatrist prior to trial, the Court finds that he has failed to demonstrate that he received ineffective assistance of counsel. (See *In re Cox* (2003) 30 Cal.4th 974, 1019–20 [stating that a court may dispose of an ineffective assistance of counsel claim if petitioner has not demonstrated sufficient prejudice without deciding if counsel's performance was deficient.)

(LD 9 at 1–5).

At the time of Petitioner's offense, the diminished capacity defense had been abolished in California and thus, "to present a viable mental state defense, counsel would have had to show that because of his mental illness . . . [Petitioner] did not *in fact* form the intent" required to commit premeditated attempted murder. Sully v. Ayers, 725 F.3d 1057, 1070 (9th Cir. 2013) (internal quotation marks and citation omitted). Petitioner submitted evidence to the state courts that while in custody in 2003 he was referred for further mental health evaluation but was ultimately found to not meet the criteria for inclusion in the mental health treatment population. (LD 8, Ex. A; ECF No. 1 at 43, 54). While in custody in 2011, Petitioner was determined to meet the inclusion criteria for mental health services, and progress notes indicate that Petitioner was on medication, had a past risk of assaultive behavior, and had a history of depressive symptoms. (LD 8, Ex. B; ECF No. 1 at 47). The proffered evidence was far removed in time from the date of the offense. Petitioner argues that he had "one of his blackouts associated with a condition he suffers from and was suffering from at the time of the incident on March 13, 2013." (ECF No. 1 at 14). However, the submitted evidence did not indicate that Petitioner suffered from blackouts and did not otherwise demonstrate the impact of Petitioner's history of depressive symptoms and

14

anger problems on whether Petitioner actually formed the requisite mental state for premeditated attempted murder on March 13, 2013. See Sully, 725 F.3d at 1070 (finding state court was not unreasonable in concluding no prejudice stemmed from counsel's failure to investigate mental state because while petitioner "proffered evidence showing that he was generally consuming large quantities of cocaine and suffering various psychotic symptoms around the time of the murders, none of the evidence relates to the impact of his cocaine usage or psychotic symptoms on specific instances of murder").

Based on the foregoing, the superior court was not objectively unreasonable in concluding that Petitioner failed to demonstrate "there is a reasonable probability that . . . the result of the proceeding would have been different," Strickland, 466 U.S. at 694, if counsel had investigated Petitioner's mental health history. The superior court's determination was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief based on his third claim, and it should be denied.

### B. Johnson Claim

In his second claim for relief, Petitioner asserts that his conviction under California Penal Code section 12022.53(d) is invalid because section 12022.53(d) is unconstitutionally vague under Johnson v. United States, 135 S. Ct. 2551 (2015). (ECF No. 1 at 13). Respondent argues the state court's rejection of this claim was reasonable. (ECF No. 31 at 16).

This claim was raised in state habeas petitions filed in the Fresno County Superior Court and the California Supreme Court. (LDs 16, 22). The Fresno County Superior Court denied the claim in a reasoned opinion. (LD 17). The California Supreme Court summarily denied the petition. (LD 23). As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the Fresno County Superior Court. See Wilson, 138 S. Ct. at 1192.

///

In denying Petitioner's challenge to his conviction based on Johnson, the Fresno County Superior Court stated:

> First, Petitioner maintains that his conviction for premediated attempted murder and his sentence enhancement for causing great bodily harm as the result of his personal use of a firearm (Pen. Code, § 12022.53, subd. (d)) are invalid as the result of the United States Supreme Court's decision in *Johnson v. United States* (2015) 576 U.S. ___ [135 S.Ct. 2551, 192 L.Ed.2d 569 ["*Johnson*"]].
>
> However, the Court finds that nothing in the United States Supreme Court's decision in *Johnson* undermines the validity of Petitioner's convictions and/or sentences. In *Johnson*, the United States Supreme Court determined that the residual clause of the Armed-Career Criminal Act ("ACCA") was unconstitutionally vague because it required an assessment of whether the "hypothetical, ordinary" commission of a prior felony involved "conduct that presents a serious potential risk of physical injury to another." Based on its determination that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges," the Supreme Court found that increasing a defendant's sentence under the ACCA as a result of such a determination resulted in the denial of due process of law. (*Johnson v. United States* (2015) 576 U.S. ___ [135 S.Ct. 2551, 192 L.Ed.2d 569] at p. 2557.) In the present case, Petitioner has failed to present any facts or evidence that would support the conclusion that the United States Supreme Court's decision in *Johnson* undermines the validity of his convictions and/or sentences in any way. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) Petitioner was neither convicted nor sentenced under the ACCA. Consequently, the Court finds that Petitioner has failed to state a prima facie case for habeas corpus relief with respect to his first contention.

(LD 17 at 1–2).

"The Armed Career Criminal Act [ACCA] requires a federal sentencing judge to impose upon certain persons convicted of unlawfully possessing a firearm a 15-year minimum prison term. The judge is to impose that special sentence if the offender also has three prior convictions for certain violent or drug-related" felonies. United States v. Stitt, 139 S. Ct. 399, 403 (2018) (citing 18 U.S.C. § 924(e)). The ACCA's definition of "violent felony" includes "any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The "otherwise involves conduct that presents a serious potential risk of physical injury to another" language of the definition is known as the ACCA's residual clause, which the Supreme Court has struck down as "unconstitutionally vague." Johnson, 135 S. Ct. at 2555–57.

///

1 As noted by the state court, Petitioner was not sentenced under the ACCA. Moreover, the unconstitutionally vague language of the ACCA's residual clause is not mirrored in California Penal Code section 12022.53(d), which provides:

> Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 26100, personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life.

Cal. Penal Code § 12022.53(d). The government violates due process "by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." Johnson, 135 S. Ct. at 2556 (citing Kolender v. Lawson, 461 U.S. 352, 357–58 (1983)). As section 12022.53(d) is far more specific than and does not contain substantially similar language to the ACCA's unconstitutionally vague residual clause, the superior court's rejection of the Johnson claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief based on Johnson, and his second claim should be denied.

## V.

## RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be

captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 15, 2019**

UNITED STATES MAGISTRATE JUDGE